# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MCDONNEL GROUP, LLC                          CIVIL ACTION

VERSUS                                       NO. 19-9391

DFC GROUP, INC.                              SECTION: "G"(2)

## ORDER AND REASONS

This litigation arises out of a contract to construct the French Quarter Residence Project in New Orleans, Louisiana.[1] Plaintiff McDonnel Group, LLC ("Plaintiff") brings a claim for negligent professional undertaking under Louisiana law against Defendant DFC Group, Inc. ("Defendant").[2] Before the Court is Defendant's "Rule 12(b)(6) Motion to Dismiss."[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the instant motion and grants Plaintiff leave to file an amended complaint.

## I. Background

### A.    *Factual Background*

On October 14, 2015, Plaintiff, as a general contractor, contracted with French Quarter Apartments Limited Partnership ("FQA") ("FQA-Plaintiff Contract") to complete construction of the French Quarter Residence Project located at 939 Iberville Street in New Orleans,

---

[1] Rec. Doc. 1-2 at 1.

[2] *Id.* at 3.

[3] Rec. Doc. 5.

1

Louisiana.[4] FQA then separately contracted with Defendant ("FQA-Defendant Contract") to serve as the French Quarter Residence Project's "owner representative."[5]

Plaintiff asserts that the FQA-Plaintiff Contract's initial guaranteed maximum price was $32,095,000.[6] Plaintiff also asserts that the FQA-Plaintiff Contract permits additions and deductions via "change orders."[7] Plaintiff and FQA allegedly agreed to multiple change orders. These change orders allegedly resulted in the FQA-Plaintiff Contract's maximum guaranteed price increasing to $35,322,395.[8]

Plaintiff asserts that FQA and Plaintiff additionally agreed to multiple contract-modification agreements concerning the FQA-Plaintiff Contract.[9] One contract-modification agreement is the "Third Contract Modification Agreement."[10] Plaintiff claims that the Third Contract Modification Agreement entitled Plaintiff to a completion bonus fee and utility reimbursement if Plaintiff substantially completed the French Quarter Residence Project by August 11, 2017.[11] Plaintiff asserts that it substantially completed the French Quarter Residence Project on or before August 11, 2017.[12]

Plaintiff contends that despite Plaintiff timely achieving substantial completion, Defendant

---

[4] Rec. Doc. 1-2 at 4.

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 6.

advised FQA not to certify substantial completion before the August 11, 2017 deadline so that FQA could avoid paying the completion bonus fee and utility reimbursement to Plaintiff.[13] Plaintiff also contends that Defendant continues to advise FQA to "withhold payment from [Plaintiff] for alleged delays despite [Plaintiff's] timely completion of its work."[14] Moreover, Defendant allegedly pressured the French Quarter Residence Project's architect, John C. Williams ("Williams"), to delay certifying substantial completion until September 14, 2017—one month after the August 11, 2017 substantial completion deadline.[15] Finally, Defendant allegedly failed to timely approve Plaintiff's payment applications for completed work on the French Quarter Residence Project.[16]

### B.    *Procedural Background*

On June 28, 2018, Plaintiff filed a complaint against FQA in this Court, in case number 18-6335, for breaching the FQA-Plaintiff Contract.[17] On November 19, 2018, this Court stayed case number 18-6335 pending conclusion of arbitration proceedings between Plaintiff and FQA.[18]

On February 15, 2019, Plaintiff filed a petition against Defendant in the 24th Judicial District Court for the Parish of Jefferson.[19] In the Petition, Plaintiff alleges that Defendant failed to perform its role as owner representative for the French Quarter Residence Project and is

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 1.

[18] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 20.

[19] Rec. Doc. 1-2.

solidarily liable with FQA for all of Plaintiff's damages.[20] On April 15, 2019, Defendant removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[21] The case was randomly allotted to "Section M" of this Court.[22]

On April 20, 2019, Defendant filed the instant motion to dismiss.[23] On May 15, 2019, Plaintiff filed an opposition to the instant motion.[24] On May 22, 2019, with leave of Court, Defendant filed a reply brief in further support of the instant motion.[25] On October 29, 2019, this this Court was informed of the removal and accepted transfer of the case pursuant to Local Rule 3.1.1.[26]

## II. Parties' Arguments

### A.    *Defendant Arguments in Support of the Motion to Dismiss*

Defendant asserts that the Petition fails to state a cause of action against Defendant for four principal reasons: (1) Plaintiff cannot bring a breach of contract claim against Defendant; (2) Plaintiff cannot bring a claim against Defendant for breaching any standard of care in Defendant's industry; (3) Plaintiff cannot bring a claim for tortious intentional interference with contract rights against Defendant; and (4) any tort claims are barred by prescription.[27]

---

[20] *Id.* at 6, 8.

[21] Rec. Doc. 1.

[22] Rec. Doc. 2.

[23] Rec. Doc. 5.

[24] Rec. Doc. 9.

[25] Rec. Doc. 12.

[26] Rec. Doc. 19.

[27] Rec. Doc. 5.

1. **Plaintiff cannot bring a claim for breach of contract against Defendant**.

Defendant makes two principal arguments to demonstrate that Plaintiff cannot bring a claim for breach of contract against Defendant. First, Defendant argues that Plaintiff and Defendant do not have any contractual relationship because (1) Defendant is not a party to the FQA-Plaintiff contract and (2) Plaintiff is not a party to the FQA-Defendant contract.[28]

Second, Defendant argues that under Louisiana law an agent cannot be liable "for claims arising out of a contract executed by the agent on behalf of his principal."[29] Defendant contends that its principal, FQA, executed the FQA-Plaintiff Contract in FQA's own name.[30] Accordingly, Defendant contends that it cannot be held liable for FQA allegedly breaching the FQA-Plaintiff Contract.[31]

2. **Plaintiff cannot bring a claim against Defendant for breaching any standard of care in Defendant's industry**

Defendant argues that Plaintiff fails to allege how Defendant breached any professional standard and fails to identify Defendant's "industry."[32] For example, Defendant notes that Plaintiff does not allege Defendant "is an engineer, architect, land surveyor, or any other licensed and/or regulated professional who provided professional services on the [French Quarter Residence] Project."[33] Instead, according to Defendant, Plaintiff provides only "vague and insufficient allegations to buttress its baseless assertion of the existence of an ill-defined alleged

---

[28] Rec. Doc. 5-1 at 6–7.

[29] *Id.* at 7.

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.*

[33] *Id.*

duty and alleged breach of that unidentified duty."[34]

### 3. Plaintiff cannot bring a claim for tortious interference against Defendant

Defendant argues that Plaintiff fails to state a claim against Defendant for tortious interference under Louisiana law.[35] Although Plaintiff alleges that Defendant "interfered" with Williams' independent review of Plaintiff's request for change orders and payment applications, Plaintiff supposedly "has not identified any legal basis to turn these alleged interferences into a legally recognized claim for damages."[36] According to Defendant, Plaintiff's only potential claim for "interference" recognized under Louisiana law would entail a claim for "intentional interference with contract rights."[37] That claim requires Plaintiff to demonstrate the following elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation;
> (2) the corporate officer's knowledge of the contract;
> (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome;
> (4) absence of justification on the part of the officer; and
> (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.[38]

Plaintiff purportedly cannot demonstrate all of the elements above for the following reasons.[39] First, Defendant is allegedly not a corporate officer for any entity who contracted with

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 9.

[38] *Id.* at 9–11.

[39] *Id.* at 11.

6

Plaintiff.[40] Second, Defendant's actions allegedly did not cause any entity to breach a contract with Plaintiff.[41] Finally, Defendant contends that Plaintiff fails to allege that Defendant's advice and recommendations to FQA were not justified or in FQA's best interest.[42]

### 4. Louisiana's one-year prescriptive period prescribes any tort claim against Defendant

Finally, Defendant argues that if Plaintiff states a valid tort action against Defendant, the Court should dismiss that tort action because it is barred by the one-year prescriptive period applicable to tort actions under Louisiana law.[43] Defendant contends that Plaintiff was fully aware of any tort claims against Defendant in this matter no later than October 17, 2017—when Plaintiff filed a lien on the French Quarter Residence Project in response to FQA's alleged contractual breach—because Plaintiff is seeking to hold Defendant liable for damages arising from FQA's alleged contractual breach.[44] Yet Defendant contends that Plaintiff did not file the present lawsuit against Defendant until February 15, 2019, which exceeds the one-year prescriptive period under Louisiana law.[45]

### B. *Plaintiff's Arguments in Opposition of the Motion to Dismiss*

Plaintiff concedes that no contractual relationship exists between Plaintiff and Defendant.[46] Plaintiff also concedes that it is not bringing any "intentional interference with contract" claim

---

[40] *Id.* at 11.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 12.

[44] *Id.* at 12–13.

[45] *Id.* at 13.

[46] Rec. Doc. 9 at 9.

against Defendant.[47] Instead, Plaintiff argues that it states a claim for negligent professional undertaking under Louisiana Civil Code article 2315 ("Article 2315") against Defendant.[48] Plaintiff further argues that its claim for negligent professional undertaking against Defendant is not barred by Louisiana's one-year prescriptive period for tort actions.[49]

### 1. Defendant is liable for negligent professional undertaking under Article 2315

Plaintiff contends that Louisiana courts recognize a claim for "negligent professional undertaking" under Article 2315.[50] Plaintiff contends that "claims for negligent professional undertaking are determined on a case-by-case basis and according to the facts of a certain dispute."[51] Plaintiff further contends that the "key factor" for determining whether a cause of action exists for negligent professional undertaking "is the high degree of economic control the defendant has over the contractor plaintiff."[52]

Plaintiff argues that Defendant "was directly and heavily involved in the review" of Plaintiff's payment applications, change orders, and substantial completion certification.[53] Specifically, Plaintiff argues that Defendant "interfered with [Plaintiff's] progress and completion of [Plaintiff's] work, unreasonably refused to and/or failed to approve and delayed approval of [Plaintiff's] payment applications, advised and continued to advise FQA against approving [Plaintiff's] Change Orders for completed work, and interfered with [Plaintiff's] builder's risk

---

[47] *Id.*

[48] *Id.*

[49] *Id.* at 13.

[50] *Id.* at 9.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 10.

claim."[54] Plaintiff contends Defendant's "interference with those roles, which Williams should have performed as the [French Quarter Residence] Project['s] Architect" suffices to state a claim for negligent professional undertaking against Defendant.[55]

### 2. Plaintiff's claim for negligent professional undertaking against Defendant is not barred by Louisiana's one-year prescriptive period for tort actions

Plaintiff contends that Louisiana's one-year prescriptive period for tort actions "commences to run from the day injury or damage is sustained."[56] Regarding damages, Plaintiff contends that Defendant "incorrectly concludes that the damages [Plaintiff] claims against [Defendant] are identical to the damages [Plaintiff] sought from FQA through its October 10, 2017 [lien] . . . and [Plaintiff's] subsequent June 28, 2018, complaint against FQA."[57] Plaintiff argues that the June 2018 complaint against FQA sought "the principal amount of $3,065,257, plus interest, costs, and attorneys' fees" for amounts FQA owes under the FQA-Plaintiff Contract for the French Quarter Residence Project.[58]

Yet, in the instant Petition against Defendant, Plaintiff requests more than $4,000,000 dollars for "actual damages [Plaintiff] incurred due to [Defendant's] fault."[59] Plaintiff contends that most of the damages caused by Defendant's actions were not endured "until after February 15, 2018, because, as [Defendant] knows, FQA last paid [Plaintiff] on February 20, 2018."[60]

---

[54] *Id.* at 13.

[55] *Id.* at 10.

[56] *Id.* at 13.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 14.

[60] *Id.* at 15.

Accordingly, Plaintiff contends that the instant Petition, filed on February 15, 2019, did not exceed the one-year prescriptive period for tort actions under Louisiana law.[61]

Second, Plaintiff argues that the Complaint against FQA—filed on June 28, 2018 in this Court in case number 18-6335—interrupted prescription against Defendant.[62] As support, Plaintiff points to Louisiana Civil Code article 1799 ("Article 1799"), which provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidarily obligors."[63] Plaintiff notes that it "allege[s] in its Petition that FQA is solidarily liable with [Defendant] for the damages that [Defendant] caused."[64] Plaintiff further notes that Defendant's own argument—Plaintiff seeks identical damages from FQA and Defendant—demonstrates that FQA and Defendant are solidarily liable to Plaintiff.[65] Therefore, Plaintiff concludes that the Complaint against FQA, filed on June 28, 2018 in this Court, interrupted prescription against Defendant in this matter.[66]

## C.   *Defendant's Reply in Further Support of the Motion to Dismiss*

Defendant's reply makes four principal arguments in further support of the instant motion.[67] First, Defendant argues that Plaintiff ignores Louisiana law that prohibits an agent from being liable for a disclosed principal's actions.[68] Second, Defendant argues that Defendant cannot be

---

[61] *Id.* at 16.

[62] *Id.* at 14.

[63] *Id.* (citing La. Civ. Code art. 1794).

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] Rec. Doc. 12.

[68] *Id.* at 3.

held liable for damages arising under the FQA-Plaintiff Contract because Plaintiff fails to allege, for example, how Defendant could decide whether the French Quarter Residence Project was substantially completed when that determination can be made only by the owner, FQA, or the architect, Williams.[69] Instead, according to Defendant, Plaintiff alleges only that Defendant did not advise FQA in a manner favorable to Plaintiff.[70]

Third, Defendant argues that Plaintiff does not allege any facts to demonstrate that Defendant exercised a high degree of control over FQA or Williams.[71] For example, Plaintiff supposedly fails to allege that Defendant "had the ability to stop [Plaintiff's] work on the project or otherwise substantially control [Plaintiff] in any way."[72] Defendant contends that Plaintiff cannot make such an allegation because Defendant "is neither an architect nor an engineer nor was it authorized to stop the work on the [French Quarter Residence] [P]roject."[73] Instead, Defendant's role in the French Quarter Residence Project was allegedly limited to providing "guidance, recommendations and/or advice to its principal FQA."[74]

Finally, Defendant repeats several arguments regarding prescription from its memorandum in support.[75] The repetitive arguments contend that if Plaintiff asserts any valid tort action against Defendant, that tort action should be dismissed as time barred under Louisiana's one-year

---

[69] *Id.*

[70] *Id.* at 4.

[71] *Id.*

[72] *Id.* at 5.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 6.

prescriptive period for tort actions.[76]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[77] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[78] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[79] "Factual allegations must be enough to raise a right to relief above the speculative level."[80] A claim is facially plausible when the Plaintiff has pleaded facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged."[81]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[82] Although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[83] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[84] Similarly,

---

[76] *Id.*

[77] Fed. R. Civ. P. 12(b)(6).

[78] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[79] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[80] *Twombly*, 550 U.S. at 555.

[81] *Iqbal*, 556 U.S. at 678.

[82] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[83] *Iqbal*, 556 U.S. at 677–78.

[84] *Id.* at 679.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[85] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[86] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[87] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[88] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[89]

## IV. Law and Analysis

### A. Whether Plaintiff States a Claim for Negligent Professional Undertaking Under Article 2315.

Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Plaintiff argues that it states a claim against Defendant for "negligent professional undertaking" under Article 2315.[90] Louisiana courts have recognized a claim for negligent professional undertaking under Article 2315 even when the parties lack contractual privity.[91] This cause of action hinges on the "degree of economic control"

---

[85] *Id.* at 678.

[86] *Id.*

[87] *Id.*

[88] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[89] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[90] Rec. Doc. 9 at 9.

[91] *Lathan Co., Inc. v. State, Dep't of Educ., Recovery Sch. Dist.*, 2016-0913 (La. App. 1 Cir. 12/6/17), 237

that one party exercises over another party when performing a professional service.[92] Louisiana courts apply a balancing test to determine whether this cause of action exists on a "case-by-case basis."[93]

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.[94]

For instance, in *Colbert v. B.F. Carvin Construction Co.*, a general contractor stated a claim against an architect for negligent professional undertaking despite lacking contractual privity.[95] The general contractor contracted with the Orleans Parish School Board ("OPSB") to renovate an elementary school.[96] OPSB then separately contracted with the architect to work on the elementary school's renovation.[97] The general contractor alleged that the architect compelled the general contractor "to perform extra work not included in the [elementary school project's] plans" by withholding its recommendation to OPSB to pay the general contractor for compensation due.[98] The general contractor also alleged that the architect refused to timely inspect completed

---

So. 3d 1, 9; *Colbert v. B.F. Carvin Const. Co.*, 600 So. 2d 719, 725 (La. Ct. App. 1991); *see also Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746, 753 (E.D. La. 2012) (Barbier, J.).

[92] *Colbert*, 600 So. 2d at 725. Furthermore, a party's specific profession is not determinative of whether a cause of action exists. *See Lathan*, 237 So. 3d at 9; *Colbert*, 600 So. 2d at 725; *see also Harris Builders*, 861 F. Supp. 2d at 753.

[93] *Lathan*, 237 So. 3d at 6.

[94] *Id.* (quoting *Colbert*, 600 So.2d at 725) (emphasis omitted).

[95] *See Colbert*, 600 So.2d at 720–721, 725.

[96] *Id.* at 720.

[97] *Id.*

[98] *Id.* at 721.

work and, in doing so, caused the general contractor to provide maintenance services not originally contemplated.[99]

Considering those allegations, the Louisiana Fifth Circuit Court of Appeal held that the general contractor's allegations sufficed to state a claim for negligent professional undertaking under the applicable balancing test for the following reasons: (1) the general contractor's allegations "indicated the person to be injured by the architect's negligence was known, i.e. the contractor"; (2) "it was foreseeable that the [general] contractor would be injured by the architect's negligence"; (3) the allegations demonstrated "the [general] contractor would be injured by the architect's negligent actions and failure to act"; and (4) the allegations indicated "a closeness between the injury suffered and the architect's conduct so that the contractor is in a class of persons whose connection with the transaction was so close as to approach that of privity."[100] The court in *Colbert* stated that the rationale for imposing liability upon the architect entailed the degree of control exerted by the architect over the general contractor.[101]

*Colbert*'s balancing test was recently applied by another section of this Court in *Harris Builders, L.L.C. v. URS Corporation*.[102] In that case, a general contractor contracted with the Port of South Louisiana to build a warehouse project.[103] The Port of South Louisiana then separately contracted with URS Corporation ("URS") to serve as "engineer, consultant, construction

---

[99] *Id.*

[100] *Id.* at 725.

[101] *Id.* at 724.

[102] *Harris Builders*, 861 F. Supp. 2d at 753.

[103] *Id.* at 748.

15

manager, and *owner representative*" on the warehouse project.[104] The general contractor brought

a claim for negligent professional undertaking against URS, despite a lack of contractual privity,

because URS violated its duty to "manage the project in a fair manner" and "approve completed

work when warranted."[105]

The court in *Harris Builders* reasoned that the general contractor's claim for negligent

professional undertaking "passe[d] muster under the balancing test in *Colbert*" for the following

reasons: (1) "URS's construction plan preparations and instructions to [the general contractor] to

redo certain work were acts that URS had to have known would directly affect [the general

contractor]" (2) it "was foreseeable and fairly certain that [the general contractor] would suffer

economic harm if URS managed the project poorly" and (3) "URS's development of project

specifications directly affected the work [the general contractor] performed."[106] In short, the court

in *Harris Builders* determined that the general contractor asserted "a high degree of economic

control by URS [and] that was the purpose recognized in *Colbert* as supporting a cause of action"

for negligent professional undertaking.[107]

The Louisiana First Circuit Court of Appeal, in *Lathan Company, Inc. v. State, Department

of Education, Recovery School District*, followed the reasoning in *Harris Builders*.[108] In *Lathan

Company*, a general contractor contracted with the State of Louisiana to renovate an elementary

---

[104] *Id*. at 748, 751 (emphasis added).

[105] *Id*. at 748.

[106] *Id*. at 753.

[107] *Id*. The Court in *Harris Builders*, pointing to *Colbert*, noted that several Louisiana cases specifically refer to architects when a claim for negligent professional undertaking is at issue. *Id*. Yet the Court in *Harris Builders* held that *Colbert*'s reasoning applied to URS—an alleged "engineer, consultant, construction manager, and owner representative" on the warehouse project. *Id*.

[108] *Lathan*, 237 So. 3d at 9.

school.[109] The State of Louisiana then separately contracted with Jacobs Project Management Company to serve as "construction manager" on the elementary school project.[110] The general contractor sued Jacobs for negligent professional undertaking and summarized Jacobs' wrongful acts as follows: "(1) its unreasonable refusal to approve [the general contractor's] payment applications and schedules; (2) its extremely delayed responses to [the general contractor's] questions and submittals; (3) its refusal to give needed responses to reasonable questions; (4) its refusal to properly recommend substantial completion; (5) its refusal to properly manage the oversight of the project; and (6) its overall interference with the progress and completion of the project."[111] Although Jacobs was a project management company—not an architect, engineer, or consultant—the court held that the general contractor stated a claim against Jacobs for negligent professional undertaking under *Colbert*'s balancing test.[112]

In this case, Plaintiff alleges that Defendant, as FQA's owner representative, failed "to perform its role as FQA's owner[] representative on the [French Quarter Residence] Project in accordance with the standard of care of professionals in [Defendant's] industry."[113] Specifically, according to the petition, Defendant "interfered with [Plaintiff's] progress and completion of the [French Quarter Residence] Project."[114] Plaintiff points to the following allegations in the Petition to demonstrate Defendant's degree of control over FQA and its completion of the French Quarter

---

[109] *Id.* at 3.

[110] *Id.*

[111] *Id.* at 4.

[112] *Id.* at 9.

[113] Rec. Doc. 1-2 at 3.

[114] *Id.*

Residence Project:

(1) Defendant refused and/or failed to advise FQA to certify the French Quarter Residence Project's substantial completion by August 11, 2017 so that FQA could avoid paying Plaintiff a completion bonus fee and utility reimbursement.[115]

(2) Defendant pressured the French Quarter Residence Project's architect, Williams, to delay certifying substantial completion so that FQA could avoid paying Plaintiff a completion bonus fee and utility reimbursement.[116]

(3) Defendant interfered with Williams' independent review and analysis of Plaintiff's requests for change orders and payment applications.[117]

(4) Defendant unreasonably refused to timely approve Plaintiff's payment applications.[118]

(5) Defendant advised FQA against executing a change order for the utility reimbursement despite Plaintiff satisfying all requirements for a utility reimbursement.[119]

(6) Defendant did not advise FQA to execute change orders for Plaintiff's claims for work performed outside the scope of the FQA-Plaintiff Contract.[120]

(7) Defendant interfered with Plaintiff's insurance claim for damages and expenses caused by a water intrusion in the French Quarter Residence Project.[121]

The allegations above suffice to state a claim for negligent professional undertaking under *Colbert*'s balancing test for the following reasons. First, Defendant's purported advice, instructions, and pressure illustrated above involve actions that Defendant should have known would directly and economically affect Plaintiff. Second, it was foreseeable and certain that Plaintiff would suffer economic harm if Defendant proceeded with such advice, instructions, and pressure. Indeed, according to Plaintiff, Defendant interfered with Plaintiff's substantial

---

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.* at 4.

[121] *Id.*

completion bonus fee, utility reimbursement, payment applications, and change orders.[122] Third, Defendant's advice, instructions, and pressure are closely connected to Plaintiff's injury—including FQA's alleged wrongful withholding of compensation. Finally, Plaintiff's allegation that Defendant advised FQA to not certify substantial completion and pressured Williams to not certify substantial completion—despite allegedly knowing that Plaintiff timely achieved substantial completion of the French Quarter Residence Project—could entail moral blame.

In sum, Plaintiff's allegations, similar to the general contractors' allegations in *Colbert*, *Harris Builders*, and *Lathan Company*, amount to Defendant being heavily involved in reviewing Plaintiff's payment applications, certificate of substantial completion, and a variety of other tasks.[123] Put another way, Plaintiff's allegations amount to Defendant maintaining a high degree of economic control over Plaintiff during the French Quarter Residence Project's construction. For these reasons, Plaintiff states a claim for negligent professional undertaking against Defendant.

## B.    *Whether Plaintiff's Claim for Negligent Professional Undertaking is Prescribed*

Defendant contends that Louisiana's one-year prescriptive period for tort actions bars Plaintiff's cause of action for negligent professional undertaking.[124] Under Louisiana Civil Code article 3492 ("Article 3492"), actions in tort are delictual actions and subject to a one-year prescription period.[125] Plaintiff's claim for negligent professional undertaking is a tort claim and, therefore, is subject to Article 3492's one-year prescriptive period.

---

[122] *Id.* at 3–4

[123] *Id.*

[124] Rec. Doc. 5-1 at 12.

[125] In a diversity action, a federal district court must apply the forum state's prescriptive period. *See Orleans Parish Sch. Bd. v. Asbestos Corp. Ltd.*, 114 F.3d 66, 68 (5th Cir. 1997).

Plaintiff argues that the instant Petition, filed on February 15, 2019, does not exceed the one-year prescriptive period for tort actions under Louisiana law.[126] Plaintiff makes two principal arguments to show that Plaintiff's claim for negligent professional undertaking is not prescribed.[127] First, Plaintiff contends that it suffered most of the damages due to Defendant's actions after February 15, 2018.[128] Second, Plaintiff argues that the June 2018 Complaint against FQA in case number 18-6355 interrupted prescription in the instant case. The Court will consider each argument in turn.

**1.    Whether Plaintiff brought the negligent professional undertaking claim within one year of accrual**

Plaintiff brought the claim for negligent professional undertaking in the Petition on February 15, 2019. The Court must now decide when the one-year prescription period accrued. Article 3492's one-year prescriptive period for tort actions begins to run when "the injured party discovers or should have discovered the facts upon which his cause of action is based."[129] Plaintiff contends that it suffered most of the "actual damages [Plaintiff] incurred due to [Defendant's] fault" after "FQA last paid [Plaintiff] on February 20, 2018."[130] On the other hand, Defendant argues that Plaintiff recognized its claim against Defendant for negligent professional undertaking no later than October 17, 2017, and any tort action concerning the French Quarter Residence Project prescribed no later than October 18, 2018.[131]

---

[126] Rec. Doc. 9 at 13–15.

[127] *Id.*

[128] *Id.* at 14.

[129] *Griffin v. Kinberger*, 507 So. 2d 821, 823 (La. 1987).

[130] *Id.* at 15.

[131] Rec. Doc. 5-1 at 12–13.

The Louisiana Supreme Court, in *Harvey v. Dixie Graphics, Inc.* explained when Article 3942's one-year prescriptive period commences.[132] In *Harvey*, the Louisiana Supreme Court stated that a tort action begins to accrue "when the plaintiff's right to be free of illegal damage has been violated."[133] The damage sustained must be actual, determinable, and not merely speculative.[134] Yet "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action."[135] Therefore, "in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act."[136]

In *Harvey*, the plaintiff alleged that an accounting firm negligently prepared income tax returns.[137] The plaintiff recognized that the income tax returns were incorrectly completed in November 1984.[138] Thereafter, in December 1986, the plaintiff paid the Internal Revenue Service more than $175,000 due to the incorrect income tax returns.[139] The plaintiff did not sue the accounting firm until June 1987.[140] The lower court held that the prescription period for the

---

[132] *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992).

[133] *Id.*

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] *Id.* at 353.

[138] *Id.*

[139] *Id.*

[140] *Id.*

plaintiff's negligence claim commenced in November 1984 as opposed to December 1986.[141] The Louisiana Supreme Court affirmed that decision.[142] The Louisiana Supreme Court reasoned: "The mere fact that all of [the plaintiff's] damages were not yet suffered because he had not yet written a check to the IRS does not change the key fact that the plaintiff was certainly aware that he had suffered appreciable harm from the allegedly tortious act of [the accounting firm]."[143]

Here, Plaintiff alleges that Defendant refused to advise FQA to certify the French Quarter Residence Project's substantial completion by August 11, 2017 so that FQA could avoid paying Plaintiff a completion bonus fee and utility reimbursement.[144] Plaintiff also alleges that Defendant pressured the French Quarter Residence Project's architect to delay certifying substantial completion until September 14, 2017—one month after the August 11, 2017 substantial completion deadline.[145] Finally, Plaintiff concedes that it filed a lien on the French Quarter Residence Project on October 10, 2017 because of FQA's alleged contractual breach.[146] Importantly, Plaintiff attempts to hold Defendant liable for damages arising out of FQA's alleged contractual breach.[147] Therefore, accepting Plaintiff's allegations in the Petition as true, Plaintiff became aware of "some but not all of [the] damages" by October 2017. Accordingly, any tort action in the instant Petition, filed in February 2019, is prescribed on the face of the Petition

---

[141] *Id.*

[142] *Id.* at 354.

[143] *Id.* at 355.

[144] Rec. Doc. 1-2 at 3.

[145] *Id.*

[146] *See* Rec. Doc. 9 at 13–14.

[147] Rec. Doc. 1-2 at 8.

because it was brought more than one year after Plaintiff recognized that it had suffered appreciable harm from the allegedly tortious act of Defendant.[148]

## 2. Whether Plaintiff sufficiently alleges that the June 2018 Complaint against FQA interrupted prescription

Plaintiff argues that the Complaint filed against FQA on June 28, 2018 in this Court, in case number 18-6335, interrupted prescription against Defendant in this case.[149] If the June 2018 Complaint interrupted prescription, the claims in the instant Petition, filed on February 15, 2019, will not be prescribed. Article 1799 provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors." Plaintiff alleges that "[Defendant] is solidarily liable with FQA to [Plaintiff] for all damages [Plaintiff] suffered due to [Defendant's] actions as FQA's representative on the [French Quarter Residence] Project."[150]

Louisiana Civil Code article 1796 ("Article 1796") provides that a "solidary obligation arises from a clear expression of the parties' intent or from the law." Article 1796 further states that "solidarity of obligation shall not be presumed." Louisiana Civil Code Article 1794 defines a solidary obligation as follows: "An obligation is solidary for the obligors when each obligor is liable for the whole performance." The Louisiana Supreme Court, in *Bellard v. American Central Insurance Company*, explained that "a solidary obligation exists when the obligors (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor."[151]

---

[148] Ordinarily, the burden of proving that a plaintiff's claim has prescribed remains with the moving party. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Yet when a plaintiff's claim has prescribed on the face of the petition, the burden shifts to the plaintiff to negate prescription. *Id.*

[149] Rec. Doc. 9 at 14.

[150] *Id.*

[151] *Bellard v. American Cent. Ins. Co.*, 2007–1335, (La. 04/14/08), 980 So. 2d 654, 663–64 (quoting *Hoefly v. Gov't Employees Ins. Co.*, 418 So. 2d 575, 579 (La. 1982)); *see also CEF Funding, L.L.C. v. Sher Garner*

Here, Plaintiff does not allege sufficient facts to demonstrate each element in *Bellard*.[152] Instead, Plaintiff merely alleges a legal conclusion: "[Defendant] is solidarily liable with FQA to [Plaintiff] for all damages [Plaintiff] suffered due to [Defendant's] actions as FQA's representative on the [French Quarter Residence] Project."[153] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[154] Accordingly, because the Petition lacks sufficient facts to support each *Bellard* element, the Petition has not adequately pleaded that Defendant and FQA are solidarily liable for the alleged damages.

In sum, Plaintiff has failed to plead sufficient facts to demonstrate its tort claim is not barred by Louisiana's one-year prescriptive period. Yet dismissal is a harsh remedy. This Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[155] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend the complaint.[156] Accordingly, the Court will grant Plaintiff leave to file an amended complaint to show that its tort claim is not barred by Louisiana's one-year prescriptive period for tort actions.

## V. Conclusion

Considering the foregoing reasons,

---

*Cahill Richter Klein & Hilbert, L.L.C.*, No. CV 09-6623, 2011 WL 13202966, at *4 (E.D. La. May 3, 2011) (Africk, J.).

[152] Rec. Doc. 1-2.

[153] *Id.* at 14.

[154] *Iqbal*, 556 U.S. at 677–78.

[155] *Beanal v. Freeport–McMoran, Inc*., 197 F.3d 161, 164 (5th Cir. 1999).

[156] *See Carroll v. Fort James Corp*., 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 597–98 (5th Cir. 1981)).

**IT IS HEREBY ORDERED** that Defendant DFC Group, Inc.'s "Rule 12(b)(6) Motion to Dismiss"[157] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff McDonnel Group, LLC is granted leave to file an amended complaint within fourteen days of this Order to show that its tort claim is not barred by Louisiana's one-year prescriptive period for tort actions.

**NEW ORLEANS, LOUISIANA,** this  21st  day of February 2020.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[157] Rec. Doc. 5.