UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MCDONNEL GROUP, LLC | CIVIL ACTION |
| VERSUS | NO. 19-9391 |
| DFC GROUP, INC. | SECTION: "G"(2) |

## ORDER AND REASONS

This litigation arises out of an alleged breach of a construction contract to renovate the French Quarter Residences Project in New Orleans, Louisiana.[1] Plaintiff McDonnel Group, LLC ("Plaintiff") brings a claim against Defendant DFC Group, Inc. ("Defendant") for negligent professional undertaking under Louisiana law.[2] Before the Court is a "Motion for Summary Judgment" filed by Defendant.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion without prejudice pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

## I. Background

### A.    *Factual Background*

On October 14, 2015, Plaintiff, a general contractor, contracted entered into a contract with French Quarter Apartments Limited Partnership ("FQA"), as owner, to complete construction of the French Quarter Residences Project in New Orleans, Louisiana  (the "FQA-

---

[1] Rec. Doc. 1-2 at 1; Rec. Doc. 27 at 2.

[2] Rec. Doc. 1-2 at 3; Rec. Doc. 27 at 8.

[3] Rec. Doc. 30.

Plaintiff Contract").[4] FQA then separately contracted with Defendant for Defendant to serve as FQA's designated "owner's representative" (the "FQA-Defendant Contract").[5] The FQA-Plaintiff Contract allegedly had an initial guaranteed maximum price of $32,095,000, subject to additions and deductions via "change orders."[6] Plaintiff and FQA allegedly agreed to multiple change orders, which resulted in a revised maximum guaranteed price of $35,322,395 for the FQA-Plaintiff Contract.[7]

In addition, Plaintiff and FQA allegedly entered into multiple "contract modification" agreements involving the FQA-Plaintiff Contract, including a "Third Contract Modification Agreement" effective February 10, 2017.[8] Plaintiff claims that the Third Contract Modification Agreement entitled Plaintiff to a "Completion Bonus Fee" and "Utility Reimbursement" if Plaintiff substantially completed the French Quarter Residences Project by August 11, 2017.[9] Plaintiff asserts that it achieved substantial completion of the French Quarter Residences Project on or before August 11, 2017.[10]

Plaintiff contends that, despite Plaintiff achieving timely substantial completion, Defendant "refused and/or failed to advise FQA" to certify substantial completion before the August 11, 2017 deadline "to avoid FQA paying [Plaintiff] the Completion Bonus Fee and Utility

---

[4] Rec. Doc. 27 at 2.

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 4.

Reimbursement."[11] Plaintiff further contends that Defendant and FQA "pressured [the French Quarter Residences Project architect] to delay certifying Substantial Completion of the Project until September 14, 2017."[12] Additionally, Plaintiff alleges that Defendant failed to timely approve Plaintiff's payment applications for completed work on the French Quarter Residences Project, including Plaintiff's final applications for payment submitted on March 14, 2018 and March 20, 2018.[13] Plaintiff asserts that Defendant "continues to advise FQA to withhold payment from [Plaintiff] for alleged delays despite [Plaintiff's] timely completion of its work."[14]

Plaintiff alleges that Defendant's representations and advice to FQA constitute a negligent professional undertaking.[15] Plaintiff argues that Defendant is solidarily liable with FQA to Plaintiff for all damages Plaintiff suffered due to Defendant's actions as FQA's representative on the French Quarter Residences Project.[16]

**B.    *Procedural Background***

On June 28, 2018, Plaintiff filed a complaint against FQA in this Court for allegedly breaching the FQA-Plaintiff Contract in case number 18-cv-6335.[17] On November 19, 2018, this Court stayed case number 18-cv-6335 pending conclusion of the arbitration proceedings between Plaintiff and FQA.[18] On June 28, 2019, this Court entered an order administratively closing the

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 5.

[14] *Id.*

[15] *Id.* at 8–9.

[16] *Id.*

[17] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 1.

[18] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 20.

breach of contract suit brought by Plaintiff against FQA.[19]

On February 15, 2019, Plaintiff filed a petition against Defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[20] On April 15, 2019, Defendant removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[21] On April 20, 2019, Defendant filed a motion to dismiss.[22] On October 29, 2019, this case was transferred from Judge Wendy Vitter, Section "D" of this Court, to Chief Judge Nannette Brown, Section "G" of this Court, pursuant to Local Rule 3.1.1.[23] On February 21, 2020, this Court denied the motion to dismiss and granted Plaintiff leave to file an amended complaint to allege facts showing that its tort claim is not barred by the one-year prescriptive period under Louisiana Civil Code article 3492.[24] On March 13, 2020, Plaintiff filed a first amended complaint.[25] Defendant filed an answer on March 30, 2020.[26]

On April 1, 2020, Defendant filed the instant motion for summary judgment.[27] Plaintiff filed an opposition to the instant motion on April 28, 2020.[28] On May 7, 2020, with leave of

---

[19] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 21.

[20] Rec. Doc. 1-2.

[21] Rec. Doc. 1.

[22] Rec. Doc. 5.

[23] Rec. Doc. 19.

[24] Rec. Doc. 23.

[25] Rec. Doc. 27.

[26] Rec. Doc. 28.

[27] Rec. Doc. 30.

[28] Rec. Doc. 33.

Court, Defendant filed a reply to Plaintiff's opposition.[29]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of the Motion for Summary Judgment*

Defendant's sole argument in support of the motion for summary judgment is that Plaintiff's negligent professional undertaking tort claim is barred by the one-year prescriptive period for delictual actions set forth at Louisiana Civil Code article 3492.[30] Specifically, Defendant argues that the factual basis for Plaintiff's claim was "clearly known" to Plaintiff more than one year prior to February 15, 2019, the day on which Plaintiff filed the petition against Defendants in state court.[31] In support, Defendant offers various documentation and written testimony which Defendant contends "makes clear [that] [Plaintiff] was fully aware as of October 2017, at the latest, of the actions of [Defendant] which [Plaintiff] now contends support its claims."[32] Defendant also asserts that the complaint Plaintiff filed against FQA for allegedly breaching the FQA-Plaintiff Contract[33] does not interrupt prescription under Louisiana law because Defendant and FQA are not solidarily liable to Plaintiff under Louisiana Civil Code article 2324.[34]

### B.   *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In opposition to the instant motion, Plaintiff argues that the tort claim against Defendant

---

[29] Rec. Doc. 40.

[30] Rec. Doc. 30-4 at 6.

[31] *Id*. at 6–7.

[32] *Id.* at 7–10.

[33] *McDonnel Group, LLC v. French Quarter Apartments Limited Partnership*, 18-cv-6335, Rec. Doc. 1.

[34] Rec. Doc. 30-4 at 11–12.

is not prescribed for three reasons: (1) Plaintiff brought the negligent professional undertaking claim within one year of its accrual; (2) Defendant's allegedly negligent actions constitute a single continuing tort under the continuing tort exception to the prescriptive period; and (3) Defendant and FQA are solidary liable to each other, and the filing of the June 2018 complaint against FQA therefore interrupted the prescriptive period on the instant claim.[35]

First, Plaintiff argues that the tort claim against Defendant for negligent professional undertaking is not prescribed because "FQA was still making payments [to Plaintiff] through March 2, 2018."[36] Plaintiff contends that because payments were ongoing until March 2, 2018, damages did not accrue until less than a year before Plaintiff filed suit in February 2019.[37] Plaintiff asserts that "[d]iscovery on the FQA-[Defendant] relationship and communications will shed further light on this point and confirm the full extent to which [Defendant] was actively advising FQA . . . ."[38]

Second, Plaintiff argues that "[Defendant's] negligent actions were of a continuing nature, requiring a finding that [Plaintiff's] lawsuit against [Defendant] is not prescribed."[39] Plaintiff relies on the "continuing tort doctrine" to argue that ongoing damages result in an "extended prescriptive period," and that Defendant's allegedly negligent actions constitute a single continuing tort under the doctrine.[40] In the alternative, Plaintiff argues that each of Defendant's

---

[35] *See* Rec. Doc. 33.

[36] *Id.* at 16.

[37] *Id.*

[38] *Id.* at 20.

[39] *Id.*

[40] *Id.* at 20–24.

allegedly negligent actions "stands independently and should be found to have arisen on different dates for purposes of prescription."[41]

Third, Plaintiff argues that the tort claim against Defendant is not prescribed because Defendant and FQA are solidarily liable to Plaintiff under Louisiana law.[42] Plaintiff avers that because Defendant and FQA are solidarily liable to Plaintiff, the lawsuit filed by Plaintiff against FQA on June 28, 2018, interrupted prescription of Plaintiff's claims against Defendant.[43] Plaintiff also contends that it "expects to uncover information through discovery that will shed additional light on the contractual relationship between [Defendant] and FQA."[44] Moreover, Plaintiff states that "the relationship between FQA and [Defendant] remains unclear" and "raise[s] factual issues that preclude summary judgment."[45]

Across these three arguments, Plaintiff makes an overarching argument that discovery is still "in its infancy" and summary judgment is not appropriate at this stage pursuant to Federal Rule of Civil Procedure 56(d).[46] Plaintiff provides a declaration of its counsel, M. David Kurtz, to support its position that additional discovery is needed to properly oppose the motion for summary judgment.[47] Therefore, Plaintiff argues that summary judgment is not appropriate at this time because additional discovery may shed light on the factual issues raised in the motion.[48]

---

[41] *Id.* at 24.

[42] *Id*. at 12–16.

[43] *Id.* at 2.

[44] *Id.* at 14.

[45] *Id.* at 15–16.

[46] *Id*. at 11–12 (citing Rec. Doc. 33-2).

[47] Rec. Doc. 33-2.

[48] Rec. Doc. 33 at 25.

### C.    *Defendant's Arguments in Further Support of the Motion for Summary Judgment*

In reply, Defendant offers several arguments in further support of the motion for summary judgment. First, Defendant argues that additional discovery is not needed.[49] Second, Defendant contends that Defendant's professional role on the French Quarter Residence Project ended on February 9, 2018, over a year before Plaintiff filed the petition in this case.[50] Third, Defendant reasserts that it is not solidarily liable with FQA to Plaintiff.[51] Fourth, Defendant argues that under Louisiana law, the prescriptive period begins to run when the injured party becomes aware that it "may incur some damage as a result of the alleged negligence of the defendant, not when the final amount of that damage is known."[52] Fifth, Defendant contends that the continuing tort doctrine is inapplicable in this matter because "[Defendant's] actions were not continuous in the sense that there was not a breach, and resulting damage, on a daily basis."[53] Finally, Defendant avers that the exhibits offered by Plaintiff in opposition to the motion for summary judgment are "irrelevant and/or do not support the arguments made."[54]

### III. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[49] Rec. Doc. 40 at 2–4.

[50] *Id.* at 4–5.

[51] *Id*. at 5–8.

[52] *Id.* at 8–9.

[53] *Id.* at 9–12.

[54] *Id.* at 13–14.

8

of law."[55] The court considers "all of the evidence in the record but refrains from making credibility determination or weighing the evidence."[56] All facts and reasonable inferences must be drawn in the light most favorable to the nonmoving party.[57] An issue is genuine when "evidence is such that a reasonable jury could return a verdict for the nonmoving party."[58]

The party seeking summary judgment has the burden of proof to show that no genuine dispute as to any material fact exists and may prove this by: "(1) submit[ing] evidentiary documents that negate the existence of some material elements of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate[ing] that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[59] Pursuant to *Celotex Corp. v. Catrett*, if the dispositive issue is one that the nonmoving party bears the burden of proving, the moving parties burden is discharged upon "showing" the court that there is insufficient evidence to support the nonmoving parties case.[60] If the movant meets their burden by showing there is insufficient record evidence on an issue in which the nonmoving party bears the burden of proof, the burden shifts to the nonmoving party to prove a genuine issue of material fact.[61] A genuine issue may not be created by "'some metaphysical doubt as to the material facts,' 'by conclusory allegations,' by

---

[55] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[56] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[57] *Rabalais v. BP Expl. & Prod.*, No. 18-cv-9718, 2019 WL 2546927, at *2 (E.D. La. June 20, 2019) (Africk, J.).

[58] *Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[59] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[60] 477 U.S. 317, 324–25 (1986).

[61] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

'unsubstantiated assertions,' or by only a 'scintilla' of evidence."[62] The nonmoving party may not rest on the pleadings and must establish specific facts creating a genuine issue.[63] Additionally, "summary judgment is mandatory against a party who fails to make a showing sufficient to establish the existence of an elements essential to that party's case, and one which that party will bear the burden of proof at trial."[64]

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, if a nonmovant shows by affidavit or declaration that "it cannot present facts essential to justify its opposition" to a motion for summary judgment, the Court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Rule 56(d) "provides a mechanism for dealing with the problem of premature summary judgment motions."[65] Rule 56(d) "allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[66] "Such motions are broadly favored and should be liberally granted."[67]

## IV. Analysis

Defendant argues that summary judgment is appropriate in this case because Plaintiff's negligent professional undertaking claim is barred by the one-year prescriptive period for

---

[62] *Little*, 37 F.3d at 1075.

[63] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[64] *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011).

[65] *State Farm Fire & Cas., Co. v. Whirlpool Corp.*, No. 10-1922, 2011 WL 3567466, at *2 (N.D. Tex. Aug. 15, 2011) (citing *Parakkavetty v. Indus Int'l, Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb.12, 2004) (citing *Owens v. Estate of Erwin*, 968 F.Supp. 320, 322 (N.D.Tex. 1997))).

[66] *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990)).

[67] *Id.* (citing *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991)).

delictual actions under Louisiana Civil Code article 3492.[68] In opposition, Plaintiff argues that the claim is not barred by the one-year prescriptive period.[69]

When presented with a state law claim, "federal courts apply state statutes of limitations and related state law governing tolling of the limitation period."[70] "[U]nder Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."[71] Louisiana Civil Code article 3492 provides that "[d]elictual actions are subject to a liberative prescription of one year." Article 3492's one-year prescriptive period for tort actions begins to run when "the injured party discovers or should have discovered the facts upon which his cause of action is based."[72]

Plaintiff concedes that the negligent professional undertaking claim is subject to Article 3492's one-year prescriptive period.[73] Plaintiff argues that the tort claim is not prescribed for three reasons: (1) Plaintiff brought the negligent professional undertaking claim within one year of its accrual; (2) Defendant's allegedly negligent actions constitute a single continuing tort under the continuing tort exception to the prescriptive period; and (3) Defendant and FQA are solidarily liable, and the filing of the June 2018 complaint against FQA interrupted the prescriptive period on the instant claim.[74] Plaintiff also argues that summary judgment is not appropriate at this time

---

[68] Rec. Doc. 30-4 at 6.

[69] *See* Rec. Doc. 33.

[70] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (1989).

[71] *Bustamento v. Tucker*, No. 92-C-0523 (La. 10/19/92), 607 So. 2d 532, 537.

[72] *Griffin v. Kinberger*, 507 So. 2d 821, 823 (La. 1987).

[73] Rec. Doc. 33 at 16.

[74] *See id.*

because additional discovery might shed light on the factual issues raised in the motion.[75] The Court addresses each of these issues in turn.

A.   **Whether Plaintiff Brought the Negligent Professional Undertaking Claim Within One Year of Accrual**

Defendant contends that Plaintiff knew or should have known of Defendant's allegedly negligent actions by October 2017.[76] In opposition, Plaintiff contends that it did not incur damages, and Plaintiff "could not possibly know of any damages, until after FQA's final payment to [Plaintiff] and later rejection of [Plaintiff's] last two pay applications [in March of 2018]."[77]

In *Harvey v. Dixie Graphics, Inc.*, the Louisiana Supreme Court explained when Article 3942's one-year prescriptive period commences.[78] The Louisiana Supreme Court stated that a tort action begins to accrue "when the plaintiff's right to be free of illegal damage has been violated."[79] The damage sustained must be actual, determinable, and not merely speculative.[80] Yet "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action."[81] Therefore, "in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage

---

[75] *Id*. at 25.

[76] Rec. Doc. 30-4 at 11.

[77] Rec. Doc. 33 at 17.

[78] 593 So. 2d 351, 354 (La. 1992).

[79] *Id.*

[80] *Id.*

[81] *Id.*

as a result of the completed tortious act."[82]

In this Court's February 21, 2020 Order denying Defendant's motion to dismiss, the Court addressed the issue of when Plaintiff's negligent professional undertaking claim accrued as follows:

> Plaintiff alleges that Defendant refused to advise FQA to certify the French Quarter Residence Project's substantial completion by August 11, 2017 so that FQA could avoid paying Plaintiff a completion bonus fee and utility reimbursement. Plaintiff also alleges that Defendant pressured the French Quarter Residence Project's architect to delay certifying substantial completion until September 14, 2017—one month after the August 11, 2017 substantial completion deadline. Finally, Plaintiff concedes that it filed a lien on the French Quarter Residence Project on October 10, 2017 because of FQA's alleged contractual breac Importantly, Plaintiff attempts to hold Defendant liable for damages arising out of FQA's alleged contractual breach. Therefore, accepting Plaintiff's allegations in the Petition as true, Plaintiff became aware of "some but not all of [the] damages" by October 2017. Accordingly, any tort action in the instant Petition, filed in February 2019, is prescribed on the face of the Petition because it was brought more than one year after Plaintiff recognized that it had suffered appreciable harm from the allegedly tortious act of Defendant.[83]

In opposition to the instant motion for summary judgment, Plaintiff argues that it was required by statute to record its lien in October 2017 and Plaintiff "had not yet been damaged by Defendant's negligent acts at that time."[84] However, the lien Plaintiff filed in October 2017 states that "[FQA] has failed to pay [Plaintiff] for all of the Work performed by [Plaintiff]."[85] Plaintiff has not presented any evidence to refute a finding that Plaintiff was aware of "some but not all of [the] damages" by October 2017.[86] Moreover, Plaintiff has not shown that additional discovery

---

[82] *Id.*

[83] Rec. Doc. 23 at 22–23 (internal citations omitted).

[84] Rec. Doc. 33 at 18.

[85] Rec. Doc. 30-1 at 56.

[86] *Harvey*, 593 So. 2d at 354 ("[I]n cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further

is necessary on this issue.[87] Therefore, Plaintiff's negligent professional undertaking claim began to accrue in October 2017 when Plaintiff became aware that it had suffered appreciable harm from the allegedly tortious act of Defendant. Plaintiff filed the instant action more than one year later on February 15, 2019.[88] As a result, Plaintiff's negligent professional undertaking claim is prescribed unless Plaintiff can show that an exception to the prescriptive period is applicable.[89]

**B.      Whether the Continuing Tort Doctrine Applies to Plaintiff's Claim**

Plaintiff relies on the "continuing tort doctrine" to argue that ongoing damages result in an "extended prescriptive period," and that Defendant's allegedly negligent actions constitute a single continuing tort.[90] Defendant contends that the continuing tort doctrine is inapplicable in this matter because "[Defendant's] actions were not continuous in the sense that there was not a breach, and resulting damage, on a daily basis."[91]

"The doctrine of continuing tort presents an exception to the one-year prescriptive period."[92] Under the continuing tort doctrine, "[w]hen the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct

---

damage as a result of the completed tortious act.").

[87] Plaintiff asserts that additional discovery will show that FQA always had the right to override Defendant's advices and pay Plaintiff what Plaintiff billed. Discovery on this issue would not change the undisputed fact that Plaintiff was aware of at least some of the damages in October 2017.

[88] *Id.* at 1.

[89] Ordinarily, the burden of proving that a plaintiff's claim has prescribed remains with the moving party. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp*., 310 F.3d 870, 877 (5th Cir. 2002). Yet when a plaintiff's claim has prescribed on the face of the petition, the burden shifts to the plaintiff to negate prescription. *Id.*

[90] Rec. Doc. 33 at 20–24.

[91] Rec. Doc. 40 at 9–12.

[92] *Terrebonne Par. Sch. Bd*, 310 F.3d at 885.

causing the damage."[93] "The continuing tort doctrine requires both continuous tortious conduct and resulting damages."[94] "For the continuing tort doctrine to apply, three requirements must be met—a continuing duty owed to plaintiff, a continuing breach of that duty by defendants, and a continuing injury or damages arising day to day."[95] Once a court finds that prescription did not commence to run on a claim until the continuous conduct abated, the court must then determine the factual issue of when the conduct abated.[96]

Plaintiff has not shown that the continuing tort doctrine applies to this case. Plaintiff's claims against Defendant are based on Defendant's alleged duty "to perform its role as FQA's owner's representative on the Project in accordance with the standard of care of professionals in [Defendant's] industry."[97] Plaintiff's claim rests on its assertion that Defendant breached this alleged duty.[98] In a letter dated February 15, 2018 and attached as an exhibit to Defendant's motion for summary judgment, counsel for FQA stated that:

> This letter shall confirm the discussions between French Quarter Apartments Limited Partnership ("FQA") and [Defendant] last week, wherein FQA advised that pursuant to Section 15.3 of the agreement, [Defendant] will no longer serve as an Owner's Representative for the purposes of contract administration. This change shall be effective as of February 9, 2018.[99]

---

[93] *Outdoor Sys., Inc. v. Entergy Corp.*, No. 2001-CA-0613 (La. App. 4 Cir. 12/19/01), 804 So. 2d 848, 850.

[94] *Id.*

[95] *Alexander v. La. State Bd. of Private Investigator Examiners*, 2015-0537 (La. App. 4 Cir. 2/17/17), 211 So. 3d 544, 557 (citing *Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99), 737 So. 2d 720, 728).

[96] *Bustamento*, 607 So. 2d at 542 ("Having found that prescription did not commence to run on Ms. Bustamento's claim until the continuous conduct abated, we must now determine the date on which such abatement occurred. Before addressing the factual issue of when the conduct abated....").

[97] Rec. Doc. 27 at 4.

[98] *Id.*

[99] Rec. Doc. 30-1 at 73.

Accordingly, Defendant's role as FQA's representative terminated on February 9, 2018. Plaintiff filed the instant action on February 15, 2019, over a year after the termination of Defendant's role as FQA's representative.[100]

Moreover, Louisiana courts have found the continuing tort doctrine applicable only in narrow circumstances "[w]here the operating cause of injury is a continuous one and gives rise to successive damages."[101] By contrast, "[w]hen the operating cause of the injury is 'not a continuous one of daily occurrence', there is a multiplicity of causes of action and of corresponding prescriptive periods."[102]

In *Young v. United States*, the United States Court of Appeals for the Fifth Circuit analyzed whether a series of allegedly negligent reports issued by the United States Geographical Survey ("USGS") regarding the potential for highway flooding during the construction of Interstate 12 constituted a continuing tort under Louisiana law.[103] The Fifth Circuit found that plaintiffs had not alleged a continuing tort under Louisiana law because they did not allege that the USGS perpetuated the injury through "overt, persistent, and ongoing acts," as required for the application of the continuing tort doctrine.[104] Similarly, in *2802 Magazine Street, LLC v. Eggspressions of North America, LLC*, the Fourth Circuit Court of Appeal of Louisiana found that a series of alleged misrepresentations relating to a commercial lease in violation of the Louisiana Unfair Trade Practices Act were "single acts" and that the continuous tort doctrine did

---

[100] *Id.* at 1.

[101] *Crump*, 737 So. 2d at 726 (internal citation omitted).

[102] *Id.* (quoting A.N. Yiannopoulos, *Predial Servitudes,* § 63 (1983)).

[103] *Young v. United States*, 727 F.3d 444, 447–49 (5th Cir. 2013).

[104] *Id.* at 448 (quoting *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003)).

not apply.[105]

In the instant case, Plaintiff claims that Defendant provided FQA with a series of "representations and advice constitut[ing] a negligent professional undertaking."[106] Plaintiff does not assert that Defendant perpetuated the alleged injury through "overt, persistent, and ongoing acts."[107] Rather, Plaintiff claims that Defendant engaged in discrete acts of negligence. Specifically, Plaintiff alleges that Defendant engaged in a series of "damaging communications with FQA."[108] Accordingly, like in *Young* and *2802 Magazine Street, LLC*, Plaintiff has not demonstrated that the continuing tort doctrine is applicable to this case. Moreover, Plaintiff has not shown that additional discovery is necessary on this issue.[109]

### C.   Whether the June 2018 Complaint Interrupted Prescription

Plaintiff avers that Defendant and FQA are solidarily liable to Plaintiff and that the lawsuit filed by Plaintiff against FQA on June 28, 2018 in this Court therefore interrupted prescription on the instant tort claim.[110] Louisiana Civil Code article 1799 provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors." Prescription is interrupted by the filing of suit in a court of competent jurisdiction.[111] Therefore, if the June 2018

---

[105] *2802 Magazine St., L.L.C. v. Eggspressions of N. Am., L.L.C.*, 2019-0085 (La. App. 4 Cir. 5/22/19), 274 So. 3d 1279, 1283–84.

[106] Rec. Doc. 27 at 8.

[107] *Young*, 727 F.3d at 448 (quoting *Hogg*, 45 So. 3d at 1003)).

[108] Rec. Doc. 33 at 23.

[109] Plaintiff asserts that "[d]iscovery is expected to show that [Defendant] gave continued advices relative to [Plaintiff's] payment claims against FQA beyond the exhibits introduced with this Opposition." Rec. Doc. 33 at 24. Discovery on this issue would not alter this Court's finding that these incidents were discrete acts of alleged negligence.

[110] Rec. Doc. 33 at 2.

[111] LSA–C.C. art. 3462.

17

complaint interrupted prescription, the claims in the instant petition filed on February 15, 2019 will not be prescribed. Defendant disputes the premise of Plaintiff's argument by contending that FQA and Defendant are not solidarily liable under Louisiana law.[112]

Louisiana Civil Code article 1796 provides that a "solidary obligation arises from a clear expression of the parties' intent or from the law." Article 1796 further states that "solidarity of obligation shall not be presumed." Louisiana Civil Code article 1794 defines a solidary obligation as follows: "An obligation is solidary for the obligors when each obligor is liable for the whole performance." In *Bellard v. American Central Insurance Company*, the Louisiana Supreme Court explained that "a solidary obligation exists when the obligors (1) are obliged to the same thing, (2) so that each may be compelled for the whole, and (3) when payment by one exonerates the other from liability toward the creditor."[113]

Furthermore, in *Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism*, the Louisiana Supreme Court held that 1996 amendments to the Louisiana Civil Code "abolishe[d] solidarity among non-intentional tortfeasors, and ma[de] each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to [Louisiana Civil Code] Article 2323."[114] In *BellSouth Telecommunications, LLC v. A&A Cable Contractors, Inc.*, the First Circuit Court of Appeal of Louisiana, relying on *Dumas*, held that the filing of an action for breach of contract against one defendant did not interrupt the prescriptive period of a tort

---

[112] Rec. Doc. 40 at 5–7.

[113] *Bellard v. American Cent. Ins. Co.*, 2007–1335, (La. 04/14/08), 980 So. 2d 654, 663–64 (quoting *Hoefly v. Gov't Employees Ins. Co.*, 418 So. 2d 575, 579 (La. 1982)); *see also CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2011 WL 13202966, at *4 (E.D. La. May 3, 2011) (Africk, J.).

[114] *Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism*, No. 02-0563 (La. 10/15/02), 828 So. 2d 530, 537.

claim against a different defendant.[115] The *BellSouth* court reasoned that the defendants could not be solidarity liable because there were "simply no allegations of any conspiracy to commit an intentional or willful act."[116]

A "solidary obligation arises from a clear expression of the parties' intent or from the law."[117] After the 1996 amendments to the Louisiana Civil Code, a solidary obligation arises under the law in cases of intentional tort.[118] In this case, Plaintiff does not claim that Defendant and FQA committed an intentional tort. Additionally, Plaintiff does not identify any other statutory basis for solidary liability. Therefore, Plaintiff must show that there was a clear expression of the parties' intent for Defendant and FQA to be held solidarily liable.[119] Plaintiff has not presented any such evidence in opposition to the instant motion for summary judgment. Instead, Plaintiff contends that additional discovery is needed on this issue. Plaintiff presents the declaration of its counsel, M. David Kurtz, to support its position that additional discovery is needed to properly oppose the motion for summary judgment.[120] Mr. Kurtz's declaration states that Plaintiff "expects to uncover information through discovery that will shed additional light on the contractual relationship between [Defendant] and FQA, the extent to which [Defendant] provided advice harmful to [Plaintiff] and the extent to which FQA relied on such advice."[121] The

---

[115] *BellSouth Telecommunications, L.L.C. v. A & A Cable Contractors, Inc.*, No. 2016-0803 (La. App. 1 Cir. 5/11/17), 221 So. 3d 90, 94.

[116] *Id.*

[117] La. Civ. Code art. 1796.

[118] *Dumas*, 828 So. 2d at, 537.

[119] La. Civ. Code art. 1796.

[120] Rec. Doc. 33-2.

[121] *Id.*

extent of the contractual relationship between FQA and Defendant is paramount to Plaintiff's argument that FQA and Defendant are solidary obligors.

Because Plaintiff cannot adequately oppose the motion for summary judgment until further discovery is conducted, the Court finds that denial of the motion for summary judgment without prejudice is proper pursuant to Federal Rule of Civil Procedure 56(d). The Court notes that, pursuant to the Court's Scheduling Order, the parties have until April 14, 2021, to complete discovery and any non-evidentiary pretrial motions must be filed in sufficient time to permit hearing thereon no later than April 21, 2021.[122] Accordingly, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the Court will deny Defendant's motion for summary judgment without prejudice to allow the parties additional time to conduct discovery.

## V. Conclusion

For the reasons set forth above, the Court finds that Plaintiff cannot adequately oppose the motion for summary judgment until further discovery is conducted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant DFC Group, Inc.'s "Motion for Summary Judgment"[123] is **DENIED WITHOUT PREJUDICE** pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

**NEW ORLEANS, LOUISIANA,** this __8th__ day of February, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[122] Rec. Doc. 47.

[123] Rec. Doc. 30.